Johnny M. **VALDEZ**

v.

The **STATE** of Texas, Appellee.

No. 58241.

Court of Criminal Appeals of Texas,
Panel No. 1.

Oct. 10, 1979.

On Rehearing Nov. 10, 1981.

Marion E. Williams, Jr., Beeville, for appellant.

Thomas L. Bridges, Dist. Atty., Sinton, John H. Flinn, of counsel, Sinton, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This appeal arises from a jury verdict finding appellant guilty of burglary of a vehicle; the trial court assessed his punishment at five years confinement.

Appellant contends that the evidence is insufficient to support the finding of guilt.

The indictment returned against appellant alleged in pertinent part, that he did "intentionally and knowingly break into and enter a vehicle ... without the effective consent of Fermin Perez, the owner ... and with intent then and there to commit the offense of theft...."

The record reflects that there were no witnesses to the offense. The State presented the testimony of the complaining witness, Fermin Perez, who stated that on December 2, 1976, he left his 1957 Ford automobile unlocked with the windows down outside a bowling alley. Before Perez left his car, he engaged a warning device which would cause the horn to blow if the vehicle were entered. Upon hearing the warning device, Perez went outside, noticing the door to his car was open and saw his "C.B. head set" had been thrown over the front seat into the back. He replaced the C.B., closed the door and went back inside.

The next morning, Perez noticed that a tape deck speaker box which had contained approximately fifteen tapes was missing and reported the burglary to the police. Ultimately, eleven tapes were returned to Perez and he was paid $60.00 for the unrecovered tapes and speaker box.

The defense evidence consisted of the testimony of appellant and his neighbor, seventeen year old Lupe Gutierrez.[1] According to these witnesses, on the day of the burglary they had gone "riding around" in appellant's car and then to the bowling alley where they stayed for half an hour. When they decided to leave, appellant walked out first and was almost to his car[2] when he heard a "loud horn." According to appellant, he looked back, and "Lupe was coming to my car with the speaker box that the tapes were in." Gutierrez testified as follows:

> I just saw the tapes in the car and I got in there and I took the tapes. * * * I grabbed the tapes. And I guess it was wired or something and the alarm went off. * * * I just ran to [appellant's] car.

Q: Now had you and [appellant], while you were inside the bowling alley, had you talked at all about doing this? * * *

A: No. . . .

Q: He had no knowledge that you were going to do this?

A: No sir. I don't think so.

Q: Had you indicated anything to him about this?

A: No, I didn't.

Q: Had you decided to do this when you went into the bowling alley?

A: I just saw them when I walked in, but I didn't tell him anything.

\* \* \* \* \* \*

Q: What did you do with the speaker box?

A: I threw it. I threw it out.

Q: How about the tapes?

A: I kept the tapes.

Q: You kept all the tapes?

A: Yeah, I kept them all.

Q: Did you give any to Mr. Valdez?

A: No, I didn't.

\* \* \* \* \* \*

Q: Did he at anytime ask you for any of the tapes?

A: No, he didn't.

On cross-examination, Gutierrez was asked:

Q: So [appellant] did know you burglarized a car and he did help you, carry you away and the stolen goods away, didn't he?

A: Yes, sir. We left in his car.

Q: He aided you in getting away with the goods you had stolen, and he knew you had stole them because he was there, present when you stole them?

A: Yes, sir.

Q: And you were sixteen and he was twenty-one, is that correct?

A: That's correct.

Appellant gave virtually identical testimony. It was also brought out before the jury that on December 6th, Bee County Deputy Sheriff Eddie Hons spoke with Lupe Gutierrez and recovered about six eight track stereo tapes. On December 8th, Hons contacted appellant at work and asked him to come by the Sheriff's Office which appellant did. Hons informed appellant that he knew about the burglary and after discussing it for a while, appellant gave Hons a statement.[3] Hons testified

---

1. At the time the offense was alleged to have been committed, Gutierrez was sixteen years old.

2. It was *estimated* for the record that appellant was approximately twenty feet ahead of Gutierrez at this time.

3. "On 12/2/1976, Gutierriez [sic] came over to my house and asked me to go riding around. We left in my car and drove to the Bowling Alley in Beeville, Texas. I parked my car in the parking lot and we went inside. A short time later we walked back outside the bowling alley. As we walked by a black 1957 Ford four door car, parked in front of

that he did not arrest appellant because "he indicated . . . that he was going to try to help to get the rest of the property back to the victim, Mr. Perez." On cross-examination appellant admitted that after talking with Hons he did not believe he was seriously implicated in the burglary, and in attempting to give Hons a full description of what happened, he included several things Gutierrez had told him, but of which he had no personal knowledge. According to Hons, he returned the six tapes recovered from Gutierrez to Perez; according to Perez, about a week after the burglary, appellant and Gutierrez returned four or five [4] more tapes to the victim at his home. It was also established that appellant and his father gave Perez a check for $60.00 in about May of 1977 to pay for any unrecovered tapes, as well as the speaker box.

The trial court charged the jury as to the law of parties pursuant to § 7.02(a)(2),[5] and a verdict of guilty was returned.

The State contends that in appellant's written confession, he admitted his participation "with his juvenile companion in his carrying away of the stolen property and flight from the burglary scene. Further, appellant was found to have been in possession of property taken in the burglary shortly after the burglary occurred."

It is true that an inference or presumption of a defendant's guilt of a burglary or theft sufficient to sustain a conviction may arise from his possession of property stolen or taken in a recent burglary; however, to warrant such an inference or presumption of guilt from the circumstances of possession alone, such possession must be personal, recent, unexplained and must involve a distinct and conscious assertion of right to the property by the accused. *Rodriguez v. State*, 549 S.W.2d 747 (Tex.Cr.App.1977).

In the instant case, both appellant and Gutierrez consistently denied that appellant's "taking"—as recited by his statement—was intentional, but rather, that Gutierrez had inadvertently "left" two of the stolen tapes in appellant's car. Appellant further explained on cross-examination:

Q: And you took part of the tapes, and he took part of the tapes, isn't that correct?

A: No, sir. Two tapes were found in my car.

Q: Well, didn't you take them?

A: No, sir. I didn't take them. They were found in my car. I didn't take them.

Q: Didn't you tell [Deputy] Hons, "I took two of the tapes and Lupe took about ten tapes?"

A: That's just about the same thing, isn't it?

Q: Well, it's not the same thing, and you know it, Mr. Valdez, don't you?

the bowling alley, Lupe opened the door on the drivers [sic] side and started taking some eight track stero [sic] tapes from inside the car, the tapes were in a speaker box. The alarm went off in the car when Lupe tried to pull out the C.B. radio. We ran to my car, Lupe was carrying the tapes and the speaker, we got into my car and drove away. I took two two [sic] of the tapes and Lupe took about ten tapes and Lupe threw the speaker out of the car window because he thought it wasn't any good. Lupe came to my house on 12/7/76 and told me that the man knew we stole his tapes, so I gave the two tapes, [sic] I had to Lupe so he could return them to the owner."

4. Though Perez testified four tapes were returned at this time, State's Exhibit No. 2 depicts a total of eleven tapes which were ultimately returned to their owner.

5. Now if you find from the evidence beyond a reasonable doubt that on or about the 2nd day of December, 1976, in Bee County, Texas, Lupe Gutierrez did break into or enter a vehicle, to-wit, an automobile owned by Fermin Perez and in the possession of said Fermin Perez, without the effective consent of the said Fermin Perez, with the intent on the part of said Lupe Gutierrez to then and there commit the offense of theft of personal property in said vehicle *and that the defendant, Johnny M. Valdez, knew of the intent, if any, of said Lupe Gutierrez to break into or enter said vehicle and to then and there commit the offense of theft and acted with intent to promote or assist the commission of the offense* by Lupe Gutierrez by encouraging, directing, aiding or attempting to aid Lupe Gutierrez to commit the offense of burglary of said vehicle, then you will find the defendant, Johnny M. Valdez, guilty of burglary of a vehicle as charged in the indictment.

A: Well, they were left in my car. They were in my belonging.

Appellant's explanation of his possession of the recently stolen tapes was reasonable [6] and uncontradicted; this, coupled with his action in returning the tapes in his possession to their rightful owner render his recent possession of the tapes insufficient to warrant an inference of guilt. Compare *Mulchahey v. State*, 574 S.W.2d 112 (Tex.Cr. App.1978).

If appellant is a party to the burglary, it is by virtue of § 7.02(a)(2), V.T.C.A. Penal Code. See n. 5, supra. Therefore the question remains whether the evidence could reasonably be interpreted by the jury as showing participation in the event sufficient to render him guilty as a party. *Suff v. State*, 531 S.W.2d 814 (Tex.Cr.App.1976). The provisions of § 7.01, V.T.C.A. Penal Code abolished the distinction formerly made between "principals" and "accomplices" by Articles 65 and 70, Vernon's Ann. P.C. 1925. *Easter v. State*, 536 S.W.2d 223 (Tex.Cr.App.1976).

Under the former Penal Code,

[t]o be guilty of a felony offense as a principal, a defendant must be actually present at the time of its commission or if not present, ... he must at the time the act is being done, be himself actively engaged in the furtherance of the common purpose and design at some other place.

*Robinson v. State*, 493 S.W.2d 780, 782 (Tex. Cr.App.1973). See also *Ex parte Prior*, 540 S.W.2d 723 (Tex.Cr.App.1976).

Here, there is no showing whatever that appellant had any purpose or design in common with Gutierrez to enter Perez' vehicle with the intent to commit theft. "As to those situations in which one may be guilty as a principal when actually present, the very least that is required is, in addition to physical presence, encouragement by words or agreement to the commission of the offense. *Such agreement must be prior to or contemporaneous with the criminal event.*" *Suff*, supra, at 817.

Here, it is uncontradicted that appellant's acts occurred *after* the commission of the burglary was completed by Gutierrez. The former Penal Code's provision that an "accessory" [7] was a party to a crime has been eliminated; the conduct formerly constituting accessory acts is proscribed in the new Penal Code by § 38.05 which defines a separate and distinct crime of "hindering apprehension or prosecution." [8] *Wygal v. State*, 555 S.W.2d 465 (Tex.Cr.App.1977); *Easter*, supra.

It clearly follows that a person's "accessory" conduct is no longer recognized under Texas law as conduct making him a party to the crime with which the accused was here charged. If chargeable at all, appellant's conduct would be more appropriately alleged pursuant to § 38.05, supra. See *Wygal*, supra.

For the State's failure to prove both appellant's intent to promote or assist the commission of the burglary, as well as his solicitation, encouragement, direction, aid, or attempted aid of Gutierrez in the commission of the burglary, this cause is reversed and the prosecution is ordered dismissed. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

It is so ordered.

Before the court en banc.

---

**6.** If appellant had intended to keep any part of the burglarized property, his keeping only two of approximately fifteen tapes would prove him to be a self-sacrificing criminal indeed.

**7.** Article 77, Vernon's Ann.P.C., 1925 provided:
An accessory is one who, knowing that an offense has been committed, conceals the offender, or gives him any other aid in order that he may evade an arrest or trial or the execution of his sentence. * * *

**8.** Section 38.05, supra, provides in relevant part:
(a) A person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense, he:
(1) harbors or conceals the other;
(2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; ....

## OPINION ON STATE'S MOTION
## FOR REHEARING

W. C. DAVIS, Judge.

On original submission, this case was reversed for insufficient evidence.

The State's evidence consisted of testimony from the complaining witness, Fermin Perez, that on the night of December 2, 1976, he left his car in the parking lot of a bowling alley. Later, Perez heard the warning device go off in his car. Perez went outside and saw that his car door was open and his CB radio had been pulled out. The next day, Perez noticed that his speaker box and approximately fifteen tapes were missing. The State also introduced the appellant's statement to the police. The statement recites:

"On 12/2/1976, Gutierriez came over to my house and asked me to go riding around. We left in my car and drove to the Bowling Alley in Beeville, Texas. I parked my car in the parking lot and we went inside. A short time later we walked back outside the bowling alley. As we walked by a black 1957 Ford four door car, parked in front of the bowling alley, Lupe opened the door on the drivers [sic] side and started taking some eight track stero [sic] tapes from inside the car, the tapes were in a speaker box. The alarm went off in the car when Lupe tried to pull out the C.B. radio. We ran to my car, Lupe was carrying the tapes and the speaker, we got into my car and drove away. I took two two [sic] of the tapes and Lupe took about ten tapes and Lupe threw the speaker out of the car window because he thought it wasn't any good. Lupe came to my house on 12/7/76 and told me that the man knew we stole his tapes, so I gave the two tapes I had to Lupe so he could return them to the owner."

■ It is well settled that the mere presence of an accused at the scene of an offense is not alone sufficient to support a conviction under the principles of V.T.C.A. Penal Code, Sec. 7.02(a)(2); however, it is a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a participant. *Johnson v. State*, 537 S.W.2d 16 (Tex.Cr. App.1976); *Corondao v. State*, 508 S.W.2d 373 (Tex.Cr.App.1974). Further, while flight alone will not support a guilty verdict, evidence of flight from the scene of a crime is a circumstance from which an inference of guilt may be drawn. *Holloway v. State*, 525 S.W.2d 165 (Tex.Cr.App.1975). In this case, the appellant was present at the scene of the crime; there was evidence that he and his companion fled the scene of the crime together, then later split the stolen proceeds.

■ On appeal, the Court of Criminal Appeals must view the evidence in the light most favorable to the verdict. *Owens v. State*, 576 S.W.2d 859 (Tex.Cr.App.1979); *Tatom v. State*, 555 S.W.2d 459 (Tex.Cr. App.1977); *Guzman v. State*, 521 S.W.2d 267 (Tex.Cr.App.1975); *Provost v. State*, 514 S.W.2d 269 (Tex.Cr.App.1974). We find that the facts of this case are sufficient to support the jury's determination of guilt. See *Espinosa v. State*, 463 S.W.2d 8 (Tex.Cr. App.1971); *Williams v. State*, 461 S.W.2d 614 (Tex.Cr.App.1970).

■ In construing the sufficiency of the evidence presented in this case, it is unnecessary to apply the presumption of guilt arising from the unexplained possession of recently stolen property to sustain the conviction. However, since this subject was addressed on original submission, we need to rectify the stance taken by the panel majority concerning this presumption. The opinion on original submission stated:

"Appellant's explanation of his possession [6] of the recently stolen tapes was reasonable and uncontradicted; this, coupled with his action in returning the tapes in his possession to the rightful owner render his recent possession of the tapes insufficient to warrant an inference of guilt. (Footnote 6: If appellant had intended to keep any part of the burglarized property, his keeping only two of approximately fifteen tapes would prove him to be a self-sacrificing criminal indeed.)"

The explanation referred to above was the appellant's explanation tendered at the time of his trial. It is well settled that it is not the explanation given at the time of trial which controls whether or not the presumption arises, but the explanation given at the time an accused is first confronted with the possession of the stolen property. *Grant v. State*, 507 S.W.2d 732 (Tex.Cr.App. 1974); *Bowers v. State*, 414 S.W.2d 929 (Tex.Cr.App.1967); *Bryant v. State*, 397 S.W.2d 445 (Tex.Cr.App.1965). Further, we note that the fact that the appellant returned the stolen property after being confronted with its theft, has no bearing on the sufficiency of the evidence to show that the appellant committed the offense charged. The State's motion for rehearing is granted.

The judgment is affirmed.

TEAGUE, J. not participating.

## DISSENTING OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge, dissenting.

Not wishing to belabor the position of the unanimous panel opinion on original submission, but finding the treatment of this cause by the majority on rehearing so woefully inadequate to justify the conclusion, I am compelled to respond.

Citing the appellant's "presence at the scene of the crime," together with "evidence that [appellant] and his companion fled the scene together, then later split the stolen proceeds," the majority concludes that the State met its burden to establish, beyond a reasonable doubt, that *appellant* did "intentionally and knowingly *BREAK into and ENTER a vehicle... without the effective consent of... the owner... with intent THEN and THERE to commit* the offense of *theft,*"[1] as charged in the indictment.

Implicit in the majority's conclusion is the concession that there is *no direct evidence* either that appellant himself "entered" the affected vehicle, or assisted as a party the "entry" by Gutierrez. Under V.T.C.A. Penal Code, § 30.04,[2] it is the "breaking" or the "entry" into the vehicle which constitutes "the forbidden conduct"[3] element of the offense charged. V.T.C.A. Penal Code, § 1.07(a)(13)(A). Therefore, under the rationale of the majority opinion, proof that appellant committed the "forbidden conduct" charged, could be furnished only by circumstantial evidence that either he himself "entered" the vehicle, or, that, "acting with intent to promote or assist the commission of the offense," appellant solicited, encouraged, directed, aided, or attempted to aid Lupe Gutierrez in commission of the offense. V.T.C.A. Penal Code, § 7.02(a)(2).[4]

Viewing the evidence in a light most favorable to the verdict of guilt, it reveals that appellant's juvenile companion alone, entered the vehicle, and obtained therefrom the tapes and speaker; that both appellant and Gutierrez fled the scene; and then—as the majority characterizes it—"split" the stolen proceeds.[5] Assuming that the evi-

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. "(a) A person commits an offense if, without the effective consent of the owner, he breaks into or enters a vehicle or any part of a vehicle with intent to commit... theft.
   (b) For purposes of this section, 'enter' means to intrude;
   (1) any part of the body; or
   (2) any physical object connected with the body * * *." Section 30.04, supra.

3. " 'Conduct' means an act or omission and its *accompanying* mental state." V.T.C.A. Penal Code, § 1.07(a)(8). And " '[a]ct' means a bodily movement, whether voluntary or involun-

tary, and includes speech." V.T.C.A. Penal Code, § 1.07(a)(1).

4. The trial court, in applying the law to the facts authorized the jury to find appellant guilty *only* if they found appellant knew of Gutierrez' intent *and* acted with intent to promote or assist Gutierrez' commission of the offense. [See p. 319, n. 5, opinion on original submission wherein the court's charge is recited verbatim.]

5. Of course the only testimony contained in the record on this matter of "splitting" the proceeds was that of appellant and Gutierrez, who both insisted that Gutierrez had "left" *two of fifteen* tapes in appellant's car unintentionally. The majority apparently relies, exclusive of this

dence clearly established a calculated "split" of the property obtained by Gutierrez from the vehicle, does the majority hold that this circumstance, coupled with "presence" and "flight," constitute sufficient direct proof of secondary facts which, by logical inference, demonstrate the ultimate fact to be proved: that appellant himself entered Perez' vehicle with the accompanying mental state charged? If not, the only circumstantial proof left is the inference of guilt this Court has held can arise from proof of the defendant's possession of recently stolen property. But the majority explicitly rejects the necessity to rely on this "presumption" in reaching the conclusion that the evidence is sufficient.[6]

While § 7.02(a)(2), supra, is cited, plainly the majority result is in no manner dependent upon application of the law of "parties." Neither does the majority assail the panel's application of that body of law on original submission. Again, assuming unambiguous proof of a "split" of the property taken by Gutierrez, does the majority hold that the criminal conduct alleged against *appellant* can be committed by "adoption" or "ratification" of Gutierrez' act, after the fact? Does the majority hereby revive the old code concept of "accessory" conduct?[7]

The real problem with the State's evidence in this case is that it was merely amplified by the defensive testimony adduced; the latter clearly did not *conflict* with the State's evidence in any respect material to the offense charged. [See opinion on original submission.] Granted, the jury had unlimited authority to *disbelieve* the testimony of appellant and Gutierrez that appellant neither knew of Gutierrez' intent nor acted with intent to assist it, but such rejection does not *establish* for the State the elements of the offense.

Obviously, when the defendant's evidence is exculpatory but nevertheless *consistent* with the State's circumstantial evidence, we should acknowledge our confrontation with a classic case in which the State has simply been unable to exclude every reasonable hypothesis other than the guilt of the ac-

entirely consistent testimony, *only* on a single statement, out of context, in appellant's written statement: "I took two two [sic] of the tapes and Lupe took about ten tapes...." [See p. 318, n. 3, opinion on original submission for recitation of appellant's entire statement.]

In my view, the majority has abandoned "viewing the evidence in a light most favorable to the verdict," and has undertaken supplantation of the State's proof by stating "there was evidence that [appellant] and his companion... later *split* the stolen proceeds."

**6.** Irrespective of whether benefit of the "presumption" is defeated by an accused's reasonable explanation "given at the time [he] is first confronted with the possession," or given as evidentiary rebuttal at trial, (and likewise, irrespective of the implications resolution of that question may have regarding the use of pretrial silence against a defendant, as well as the presumption of innocence), it is well settled that "possession" will not warrant the inference of guilt absent a showing of a *distinct and conscious assertion of a right to the property by the accused,* such as an attempt to "pawn" or sell it. *Rodriguez v. State,* 549 S.W.2d 747 (Tex.Cr.App.1977).

As the panel observed on original submission, no such assertion was shown to have been made by the accused here, (and in fact, the opposite was established, the victim having testified that appellant returned his property). Thus, this circumstance alone, would defeat the State's entitlement to the *ab initio* "presumption of guilt," even if appellant's pretrial explanation were absent or unreasonable.

However, as was stated in the opinion on original submission:

"[Deputy] Hons informed appellant that he knew about the burglary and after discussing it for awhile appellant gave Hons a statement." [See p. 319, n. 4 and accompanying text.]

Apparently the prosecutor believed this "explanation" was "reasonable," considering it was the only evidence he introduced which even connected appellant to the burglary, notwithstanding its patently exculpatory tenor regarding that offense. In any event, the "unexplained possession" rule is not applicable to a burglary without evidence of unlawful entry "independent of the missing property," *Nelson v. State,* 599 S.W.2d 809 (Tex.Cr.App.1980). Since the State failed to prove a burglarious entry by appellant, the presumption does not obtain.

**7.** It is curious that the majority would imply application of the law of "parties," yet cite cases for the proposition that the evidence here is sufficient, which in no way involve or employ the law of "parties." See n. 8, *infra.*

cused of the *offense charged.*[8] See, e. g., *Urtado v. State,* 605 S.W.2d 907 (Tex.Cr. App.1980) (Majority opinion and Odom, J., concurring on original submission, and Douglas, J., dissenting to denial of State's motion for rehearing); *Pierce v. State,* 577 S.W.2d 253 (Tex.Cr.App.1979); see also *Nelson v. State,* 599 S.W.2d 809 (Tex.Cr.App. 1980); and *Owens v. State,* 576 S.W.2d 859 (Tex.Cr.App.1979).

To the demurral of a majority of the Court to make such an acknowledgment in this case, I respectfully dissent.

ONION, P. J., and ROBERTS, J., join.

---

**8.** Equally as troublesome to me as the majority's compendium of the "sufficient" evidence, are the cases cited to support the conclusion:

*Williams v. State,* 461 S.W.2d 614 (Tex.Cr. App.1970) was a case in which two eyewitnesses identified Williams as one of the robbers, while a co-defendant testified that he alone committed the robbery. In view of this *conflicting* testimony in a direct evidence case, the sufficiency of the evidence was correctly upheld on the basis of the jury's resolution of that conflict.

*Espinosa v. State,* 463 S.W.2d 8 (Tex.Cr.App. 1971), was resolved on the "presumption" of guilt, arising from the appellant's possession of recently stolen property, a concept the majority insists is not implicated here.

Citation of these cases signals to me a dangerous departure by the Court from established and proven analyses of sufficiency claims.