Affirmed and Opinion filed August 9, 2005









Affirmed and Opinion filed August 9, 2005.

 

In The

 

Fourteenth Court of Appeals

______________________

 

NO. 14-04-00005-CR

 

______________________

 

 

PATRICIA ANN
WILSON,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause No. 951,758

 



 

O P I N I O N

Appellant, Patricia Ann Wilson, was
charged by indictment with the offense of forgery of a commercial instrument,
namely a check.  See Tex. Pen. Code Ann. ' 32.21 (Vernon
Supp. 2004B05). 
A jury found her guilty, and the court sentenced her to 20 months= confinement in
the Texas Department of Criminal Justice, State Jail Division.  In two points of error, appellant argues that
(1) she received ineffective assistance of counsel, and (2) the trial court
erred by instructing the jury that it could convict her under the law of
parties.  We affirm.








The record reflects that on June 2, 2003,
an unidentified person broke into Jana Livermore=s vehicle and
stole a purse containing Livermore=s wallet,
checkbook, and driver=s license. 
Four days later, on June 6, appellant and a friend entered an H.E.B.
grocery store with one of Livermore=s stolen
checks.  In order to pay for the purchase
of several items,[1]
appellant allegedly wrote the stolen check, produced Livermore=s driver=s license,[2]
and signed the check in Livermore=s name.  Meanwhile, the two women allegedly attempted
to distract the cashier, Kathryn Griggs, by questioning her about a local
restaurant.[3]  The women=s behavior aroused
the suspicions of both Griggs and the store bookkeeper, James Bonner, who then
alerted the store manager, Jocelyn Budgewater. 
Bonner and Budgewater pursued the two women into the parking lot, where
appellant was backing her vehicle out of a parking space.  When Bonner approached the women about the
check and suggested it was written for the wrong amount, appellant became
belligerent and accused Bonner of harassing the women because they were
black.  Appellant then proceeded to back
out of the parking space and drive away. 









As appellant drove off, Budgewater wrote
down the vehicle=s license plate number and returned inside
the store to call the phone number listed on the check.  Livermore answered and explained that the
check, in fact, was stolen and that the purchase had not been authorized.  Subsequently, Budgewater called the Bellaire
Police Department, who traced the license plate number to appellant.  After further investigation, Bellaire Police
Detective Zell Woods created a photo array containing appellant=s picture.  Both Griggs and Budgewater affirmatively
identified appellant as the person involved in the forgery.  Accordingly, Woods secured a warrant for
appellant=s arrest. 


Upon realizing a warrant had been issued
for her arrest, appellant called both Budgewater and Woods to explain that she
was not the person who actually wrote the check.  Instead, appellant claimed her friend was the
person who had written the check and said that her friend was willing to admit
doing so.  Appellant agreed to meet with
Woods and to bring her friend so that a formal statement could be taken
regarding the incident.  However, neither
appellant nor her friend appeared at the scheduled meeting.  Appellant was thereafter arrested and charged
with the forgery.

In her first point of error, appellant
contends she was provided ineffective assistance of counsel.  Specifically, appellant contends her trial
counsel=s performance was
ineffective because he failed to (1) file a motion in limine or object to
testimony that suggested she was on parole; (2) object to Woods= testimony that he
believed appellant was less than truthful with him on the telephone; (3) object
to Budgewater=s hearsay testimony about what she was
told regarding the forger=s identity; and (4) object to extraneous
offense testimony regarding a string of related forgeries in which appellant
was a suspect.  








Both the United States and Texas
Constitutions guarantee an accused the right to assistance of counsel.  See U.S. Const. amend. VI; Tex.
Const. art. I, ' 10; Tex.
Code Crim. Proc. Ann. art. 1.05 (Vernon 1977).  The right necessarily includes the right to
reasonably effective assistance of counsel. 
Strickland v. Washington, 466 U.S. 668, 686 (1984).  The United States Supreme Court has
established a two‑prong test to determine whether counsel is
ineffective.  Id.  First, appellant must demonstrate her counsel=s performance was
deficient and not reasonably effective.  Id.
at 688B92.  Second, appellant must show the deficient
performance prejudiced her defense.  Id.
at 693.  Essentially, appellant must
prove that her counsel=s representation fell below an objective
standard of reasonableness, based on prevailing professional norms, and there
is a reasonable probability that, but for her counsel=s unprofessional
errors, the result of the proceeding would have been different.  Id.; Valencia v. State, 946
S.W.2d 81, 83 (Tex. Crim. App. 1997).

Judicial scrutiny of counsel=s performance must
be highly deferential and we are to indulge the strong presumption that counsel
was effective.  Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
We assume counsel=s actions and decisions were reasonably
professional and that they were motivated by sound trial strategy.  Id. 
Moreover, it is appellant=s burden to rebut
this presumption, by a preponderance of the evidence, by producing evidence
that illustrates why trial counsel did what he did.  Id. 
Any allegation of ineffectiveness must be firmly founded in the record
and the record must affirmatively demonstrate the alleged ineffectiveness.  McFarland v. State, 928 S.W.2d 482,
500 (Tex. Crim. App. 1996).  Generally,
when the record contains no evidence of the reasoning behind trial counsel=s actions, we
cannot conclude counsel=s performance was deficient.  Thompson v. State, 9 S.W.3d 808, 814
(Tex. Crim. App. 1999); Jackson, 877 S.W.2d at 771.

If appellant proves her counsel=s representation
fell below an objective standard of reasonableness, she still must
affirmatively prove prejudice as a result of those acts or omissions.  See Strickland, 466 U.S. at 693; McFarland,
928 S.W.2d at 500.  Counsel=s errors, even if
professionally unreasonable, do not warrant setting the conviction aside if the
errors had no effect on the judgment.  See
Strickland, 466 U.S. at 691. 
Therefore, appellant must prove that counsel=s errors, judged
by the totality of the representation, denied her a fair trial.  See McFarland, 928 S.W.2d at 500.  If appellant fails to make the required showing
of either deficient performance or prejudice, her claim fails.  See id.  








Here, an H.E.B. manager mentioned in
passing on direct examination that appellant called her on the phone and
relayed various matters, including that she was on parole.  Appellant=s counsel did not
object to this testimony.  Neither did
counsel attempt to prevent such testimony by filing a motion in limine.  The record is silent as to counsel=s trial strategy
in failing to object to the initial reference to parole or file a motion in
limine to prevent such a reference. 
However, we do not regard these omissions, i.e., the failure to
object or file a motion in limine, as so outrageous that no competent attorney
would have engaged in similar conduct. 
Moreover, an appellate court is not required to speculate on the reasons
behind trial counsel=s actions when confronted with a silent
record.  Jackson, 877 S.W.2d at
771; see also Thomspon, 9 S.W.3d at 814 (holding that when the record
provides no explanation as to the motivation behind trial counsel=s actions, an
appellate court should be hesitant to declare ineffective assistance of
counsel).  Thus, as to counsel=s failure to make
an initial objection or file a motion in limine, appellant has failed to
satisfy her burden to rebut the presumption that counsel=s actions were
reasonably professional and motivated by sound trial strategy.

However, after failing to object to the initial reference
to parole or file a motion in limine, appellant=s trial counsel began
his cross-examination of the witness by emphasizing her statement that
appellant was on parole, and then continued to question the witness about it
for some time:

Q. 
You said that she told you she was on parole?

A. 
If it=s not parole, then it was
probation, but she told me.

Q. 
No, no.  You didn=t clarify that.  You specifically said that she was on
parole.  My question is:  Did she tell you that?  That=s all I want, did she tell you that?

A. 
Yes, she told me that.

Q. 
Parole?

A. 
I am not sure if she told me parole.

Q. 
The point is if you=re not sure, why would you suggest something like parole if
you=re not really sure?

A. 
Because I didn=t know there was much difference in
parole and probation.

Q. 
Parole means you=ve been to the penitentiary and you
got out.  That=s what that means.

A. 
She told me she was in jail and she got out.

Q. 
The penitentiary?

A. 
No, she didn=t say penitentiary.  She saidC








Q. 
Okay.  That=s what it means.  Parole means you=ve been to the penitentiary.

A. 
Okay.

Q. 
If you don=t know, why would you say something
like that if you=re not sure?

A. 
Okay.  Well, I withdraw that
statement.  She told me one of them, I=m not sure which one.

Q. 
I mean, you don=t want me to say nothing bad about
you if it=s not true, would you?

A. 
I didn=t think it was a bad statement.

Q. 
If I told somebody, LookCwhat=s your name?

A. 
Jocelyn.

Q. 
Jocelyn is on parole.  You don=t think that=s bad?

A. 
No.  I=m not saying that that=s not bad.  At the time of the conversation, I didn=t feel she was using it in a bad
way and I didn=t accept it in a bad way.

Q. 
So it=s all right if it=s not you?

A.  No.  If it=s true, that=s not bad.








At a bench conference later in trial, the
trial court noted appellant=s counsel=s references to
parole during cross-examination, and trial counsel indicated that he had to ask
these questions in order to clear up the fact that the witness was not sure
about this statement and that appellant may have said Aprobation@ instead of Aparole.@  The trial court stated that appellant=s counsel did not
need to ask those cross-examination questions and that if counsel had objected
to the single reference to parole during the witness=s direct
examination, the trial court would have sustained the objection.  During this cross-examination, counsel
himself mentioned the word Aparole@ six times,
emphasized the witness=s statement that appellant was on parole,
and stated that parole means that you have been to the penitentiary.  While the witness qualified her statement,
stating that she was not sure if appellant said she was on parole or probation,
the witness added a new statementCthat appellant
told her she was in jail and got out. 
Counsel=s strategy of wanting to clear up that the
witness was not sure as to whether appellant indicated she was on parole or
probation was not a sound trial strategy under the circumstances of this
case.  Appellant=s trial counsel=s emphasis at the
beginning of cross-examination on appellant=s being in jail
and either on probation or parole fell below an objective standard of
reasonableness, based on prevailing professional norms.  See Hernandez v. State, 726 S.W.2d 53,
57 (Tex. Crim. App. 1986).

The second prong of Strickland
requires the appellant to show prejudice resulting from the deficient
performance of his attorney.  See
Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).  To establish prejudice, appellant must prove
there is a reasonable probability that, but for counsel=s deficient
performance, the result of the proceeding would have been different.  See Jackson, 973 S.W.2d at 956.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome of the proceedings.@  Id.

While trial counsel=s deficient
performance probably harmed appellant=s credibility with
the jury, the jury already had heard one time on direct examination that
appellant said she was on parole. 
Further, because appellant testified on her own behalf, the trial court
allowed the State to impeach her with a 1995 conviction for burglary of a motor
vehicle.  On the record before us, there
is not a reasonable probability that, but for counsel=s deficient
performance during the cross-examination of the H.E.B. manager, the result of
this proceeding would have been different. 
See Jackson, 973 S.W.2d at 956. 
Accordingly, appellant=s first point of
error is overruled.

In her second point of error, appellant complains that the trial
court erred in submitting a charge to the jury on the law of parties.  Specifically, she argues the State failed to
introduce evidence that would entitle it to a charge on the law of parties
because no evidence sufficiently proved appellant played a role in the
commission of the offense.








Under Texas law, A[a] person is
criminally responsible for an offense committed by the conduct of another if .
. . acting with intent to promote or assist the commission of the offense, he
solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense.@  Tex. Pen. Code Ann. '7.02(a)(2) (Vernon
2003).  In determining whether a parties charge is proper, i.e.,
supported by the evidence, the trial court may look to events occurring before,
during, and after the commission of the offense, and may rely on appellant=s actions which show an understanding
and common design to do the prohibited act. 
Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (quoting Cordova
v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)); Beier v. State, 687 S.W.2d 2, 4 (Tex. Crim. App.
1985).  The fundamental test, as set
forth by the Texas Court of Criminal Appeals, is as follows:

Where the evidence introduced upon the trial of the
cause shows the active participation in the offense by two or more persons, the
trial court should first remove from consideration the acts and conduct of the
non‑defendant actor. Then, if the evidence of the conduct of the
defendant then on trial would be sufficient in and of itself, to sustain the
conviction, no submission of the law of [parties] is required . . . . 

On the other hand, if the evidence introduced upon the
trial of the cause shows, or raises an issue, that the conduct of the defendant
then upon trial is not sufficient, in and of itself, to sustain a conviction,
the State=s case rests upon the law of [parties] and is dependent, at
least in part, upon the conduct of another. In such a case, the law of parties
must be submitted and made applicable to the facts of the case. 

McCuin v. State,
505 S.W.2d 827, 830 (Tex. Crim. App. 1974) (emphasis added); see also Brown
v. State, 716 S.W.2d 939, 944 (Tex. Crim. App. 1986) (citing the McCuin test
as the proper means for determining when a case should be submitted to the jury
on a law of parties theory).








Here, the evidence adduced at trial raises an issue as to the
active participation by appellant and her friend.  Appellant claimed that her friend actually
wrote the check, forged Livermore=s name, and
produced Livermore=s driver=s license.  Appellant also argued that she gave Griggs,
the H.E.B. cashier, money for the snack food items but said the cashier did not
accept the money because she accidentally included the items on her friend=s bill.  Furthermore, appellant suggested at trial
that she was not the person who wore the distinctive pink outfit or who spoke
with Griggs in an effort allegedly to distract her.  Instead, appellant claimed that it was her
friend who was actually dressed in pink and who spoke with Griggs.  Therefore, she argues Griggs was mistaken as
to the identity of the person who actually wrote the check.  Ultimately, appellant concludes that her
friend was the primary actor and that appellant was not involved in, or criminally
responsible for, the forgery.








However, the State=s theory at trial
was that appellant was the primary actor. 
The State elicited testimony that indicated appellant was actually the
person who forged the check and that appellant was the one who wore the pink
outfit.  The State also presented ample
evidence to prove appellant was present at the scene,[4]
entered and exited the grocery store with her friend, stood in the check-out
line while the check was being written, allegedly attempted to distract the cashier
by conversing with her about unrelated matters, had her items purchased with
the forged check, and fled the scene by driving away when store employees
approached the two women about the check.[5]  These are all circumstances that may be used to prove
appellant was a party to the forgery.  See Ransom, 920 S.W.2d at
302 (explaining that party status may be proved by circumstantial evidence); see also Morrison v. State, 608 S.W.2d 233, 234 (Tex. Crim.
App. 1980).  At a minimum,
these circumstances support the trial court=s decision to
include a jury instruction on the law of parties.  See Goff v. State, 931 S.W.2d 537, 545
(Tex. Crim. App. 1996) (upholding a law-of-parties instruction even though the
defendant=s theory that he was not the primary actor
was best supported by the evidence). 
Because the evidence sufficiently raised an issue regarding appellant=s role in the
offense, the State was entitled to submitCand the trial
court did not err in providingCa jury instruction
on the law of parties.  Accordingly, we
overrule appellant=s second point of error.

The judgment of the trial court is
affirmed.

 

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Opinion filed August 9, 2005.

Panel
consists of Justices Anderson, Hudson, and Frost.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  Specifically, appellant purchased
three H.E.B. gift cards for $100 each and some snack food and also wrote the
check for $25 over the total bill to receive cash back.  Therefore, the check was written for a total
of $326.89.





[2]  Based on
testimony presented at trial, it appears Livermore=s photograph was replaced with appellant=s photograph on the license.





[3]  Allegedly, the two women were quite
distracting in other regards as well. 
Appellant supposedly wore a Aloud,@ distinctive pink outfit and a hat
and her friend donned a memorable white outfit and hat.  Also, the two women stood at the end of the
check-out Abelt@ for some time before proceeding with their purchaseCconduct Griggs found unusual.





[4]  While mere
presence at the scene of the offense does not establish guilt as a party to the
offense, it is a circumstance that can be taken into account in ascertaining
whether a charge on the law of parties is warranted.  Keller v. State, 606 S.W.2d 931, 933
(Tex. Crim. App. 1980); see also Valdez v. State, 623 S.W.2d 317, 321
(Tex. Crim. App. 1979). 





[5]  Evidence of
flight from the scene of the offense is a circumstance from which an inference
of guilt may be drawn.  Valdez,
623 S.W.2d at 321.