

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TIMOTHY SCOTT RICHARDSON, | § | No. 08-22-00211-CR |
| Appellant, | § | Appeal from the |
| v. | § | 264th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bell County, Texas |
| State. | § | (TC# 80983) |

## MEMORANDUM OPINION

During a bench trial, the trial court found Appellant Timothy Scott Richardson guilty of aggravated assault with a deadly weapon. Appellant challenges his conviction, arguing that the evidence supporting it is legally insufficient. For the following reasons, we affirm.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the shooting of Iaesha Sorrells. At trial, Appellant and Iaesha testified, providing differing accounts of the relevant events, which we recount separately.

---

[1] This case was transferred from our sister court in Austin, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

### A. Iaesha's version of events

Iaesha testified that on June 1, 2019, she was with her mother, Margaret Sorrells, at the swimming pool at Margaret's apartment complex in Killeen, Texas. Iaesha and Margaret were consuming alcohol that day. At approximately 7:00 p.m., Iaesha and Margaret went to Iaesha's apartment complex. Margaret was intoxicated at the time. Iaesha and Margaret went outside the apartment complex and began socializing with other people, including a man later identified as Appellant. Iaesha had seen Appellant in the neighborhood before and had exchanged casual greetings on several prior occasions, but she did not know him well. At the time in question, Appellant was standing outside his parked vehicle on the street when Iaesha and Margaret went over to talk to him. Appellant had alcohol, marijuana, and a "little black trash bag" with cocaine and methamphetamine. Iaesha smoked marijuana while she was with Appellant. Other people were also present in the general vicinity and barbequing. At around midnight, Iaesha's neighbor asked her to use the restroom in her apartment. Iaesha told Margaret to come back with her to her apartment, but Appellant said that Margaret was okay to stay there. Iaesha and her neighbor walked back to Iaesha's apartment, and Margaret stayed with Appellant.

While Iaesha was inside her apartment, an unknown person knocked on her door and told her that Margaret had passed out in front of her apartment. Iaesha went outside and saw Margaret unconscious and a lady whose lap Margaret was lying on said she had been "foaming at the mouth." Thinking Appellant had given Margaret narcotics, Iaesha became angry and ran across the street to where Appellant was standing. She began "cussing" at him over what had happened with Margaret, and after running across the street she began "tussling" (i.e., physically fighting) with Appellant, causing her shirt to be ripped. Iaesha then "remember[ed] a gun going off and face on the ground." Iaesha heard the gunshot in her left ear—she clarified that it was her left ear

2

because at one point, she stated she heard it in her right ear. She did not realize she had been shot until she went back to the side where her apartment was, and the lady with her mother saw blood on Iaesha's face. Iaesha said she did not have anything in her hands when she ran up to Appellant, and she did not have any kind of altercation with any person other than Appellant. Iaesha testified that she did not see Appellant with a handgun, and she did not see anyone fire a gun. Iaesha received treatment at the hospital where they stitched the gunshot wound.

After being released from the hospital, Iaesha saw what she believed to be Appellant's vehicle parked in a local store parking lot. Iaesha recognized the vehicle because she had seen it at the apartment complex on several occasions. Iaesha took a photograph of the vehicle and sent it to a detective. The detective later came to Iaesha's apartment and showed her a photograph lineup of possible suspects. Iaesha identified the man she believed had shot her. When the prosecutor asked if Iaesha was certain Appellant was the person who shot her, she responded, "I remember this is the man I ran into. He was around but him and like I said, the gunshot was loud and clear in my right ear and he was close and there was no one that I seen around. And that's the last person I seen my mom with."

### B. Appellant's version of events

#### (1) *Appellant's interrogation statements*

In his interrogation with police, Appellant claimed he did not know that there was a firearm under the seat of his car, and he expressed surprise at the accusation that his vehicle was associated with a shooting. He initially denied being present at the scene when Iaesha was shot and denied shooting or possessing a firearm. However, later during the same interview, Appellant acknowledged that he was at the apartment complex on the night in question and the incident occurred as "an accident and self-defense." Appellant stated that he did not shoot a firearm but

thought someone else was shooting at him and the woman from behind a nearby fence and that "someone was trying to hurt her." Appellant claimed he had given other people shots of liquor and two women had grabbed the bottle from him to drink. The two women appeared to be intoxicated on alcohol and narcotics, and Appellant noted one woman's boyfriend was across the street.

Immediately prior to the shooting, Appellant saw the woman yelling "my momma" and running toward him. He thought the victim's boyfriend was chasing her when she ran at him. Appellant "threw [his] hands up" and the woman jumped on him, causing them to fall. Appellant thought the woman had something in her hands, but he did not have a weapon. Appellant heard the woman say that Appellant shot her, and she was holding her face. Appellant told her he had not done so. Appellant acknowledged that he did not call the police to report the shooting; he said that he was scared because he was drunk and high and he did not want to go to prison. Appellant also said that his wife advised him to go to the police because it was self-defense. When asked to elaborate about his self-defense comment, he said he thought the victim had a weapon, and she was coming right at him and jumped on him.

Appellant explained that he painted the car because the previous paint job was faulty and his uncle arranged for another place to repaint it, and he got new rims days before the interview because the old ones were warped. He stated that these changes were planned prior to the incident. With regard to the gun found in his car following the paint job, Appellant pointed out it had not been fired.

### (2) *Appellant's trial testimony*

At trial, Appellant testified that he arrived at the scene at around 10:00 p.m. and began listening to music from his vehicle with other people in the area. Appellant recalled that Iaesha and Margaret came over to his vehicle when they heard the music and grabbed the bottle of liquor

4

off the top of his vehicle, which surprised Appellant. Iaesha and Margaret told Appellant that Iaesha had just picked Margaret up from an abusive relationship and both women appeared to be "drunk and high before they came to [him]." Iaesha went back across the street because her boyfriend was angry at her for being with Appellant and other men, and Margaret stayed near his vehicle and danced. Iaesha repeatedly left and came back over the span of two hours.

At some point, Appellant told Iaesha that she needed to go back to her boyfriend when he saw her running toward him. Appellant stated that Iaesha "jumped in [his] arms and [he] just grabbed and so [they] fell. [He] didn't know what was going on. Like she was trying to grab behind [him] with security or something." Appellant claimed that there was no "tussling" or struggle and that Iaesha tugged his arm and fell on top of him. Appellant heard a "pop" and took off running because he thought someone was shooting at him from behind a fence on the left side of the building. Appellant explained he "heard the shot come from behind where [he] was parked." Appellant did not see anybody near the fence.

On cross-examination, Appellant said that Iaesha was already holding her face when she fell into his arms, and after he helped Iaesha up, she accused him of shooting her. Appellant was surprised when others accused him of shooting Iaesha. Appellant ran off then returned to his vehicle approximately two minutes later and drove away. Appellant did not see anything in Iaesha's hands, and he did not have a weapon or see anyone else with one.

As a general matter, Appellant testified that he believed Iaesha had been untruthful in her testimony. Although Appellant performed construction work in the area, he stated that he had never seen Iaesha before the day in question, and she could not have recognized his vehicle because it was dark that night. Appellant stated that he had a bottle of liquor, but he denied having cocaine or marijuana and denied giving Margaret any narcotics. Appellant acknowledged that he painted

5

his wife's car and changed its tires after the shooting, but said he had done so because it had previously been damaged in an unrelated incident and the repairs had been planned before the shooting. Appellant explained that the rims were also replaced to match the paint, and one was wobbly so it needed to be replaced. Regarding the handgun found in the vehicle when he was arrested, Appellant denied owning the handgun and believed it was left there by the person who painted the vehicle. Appellant said his lawyer told him to "lay low" until they could find out what was going on, and he and his wife were going back and forth from her house to their house. Appellant pleaded guilty to unlawful possession of a firearm by a convicted felon for possessing the handgun because "[his] lawyer told [him] to" and he asserted that he would not have consented to a search of his vehicle had he known the handgun was there.

### C. Law-enforcement investigation

After Iaesha was shot, several people called 911 to report the shooting. One caller reported as follows. The woman who yelled that the gun went off in her face had jumped on a Black male. The man must have done something to her mother because she was yelling about that and jumped on the man, then the gun went off. The man who shot got into a gold car and left. The car he fled in had some dents on the right side and the left side of the car by the back.

Officers from the Killeen Police Department (KPD) arrived at the scene and observed Iaesha with a bleeding gunshot wound to her left cheek. One of the officers recalled that Margaret was "extremely upset and emotional," fainted multiple times, and was missing a tooth. Detective Brian Goodsby also learned that prior to the shooting, Margaret had fallen to the ground due to a reaction from a possible narcotic substance. Numerous other people were present at the scene, but nobody there appeared to be hostile toward Iaesha or Margaret. Officers did not locate anyone with a firearm, but they found blood droplets on the ground and a pair of glasses on a white vehicle

6

parked in another parking spot where the shooting took place. Detective Goodsby learned that the shooter wore glasses. EMS transported Iaesha from the scene to the hospital. Iaesha provided Detective Goodsby a physical description of the suspect and his vehicle.

Officer Mayra Ayala was assigned to assist in the investigation and received information from Detective Goodsby that Iaesha had located the suspect's vehicle at a local convenience store and taken photographs of the vehicle, including its license plate. Ayala checked the vehicle's license plate, which showed that the vehicle belonged to Nicole Richardson, Appellant's wife. The suspect's physical description provided by Iaesha matched Appellant's appearance from KPD's records and his Facebook page. Ayala and two detectives went to the address at which the vehicle was registered and saw Appellant get into the vehicle and start driving. The officers stopped Appellant for a traffic violation, and Appellant told them he did not have a driver's license or insurance for the vehicle. The officers arrested Appellant for those traffic offenses and transported him to a police station. A search of the vehicle yielded a black handgun. Detective Goodsby recalled that Appellant was "crying and . . . emotionally distraught" during his interrogation. Detective Goodsby also learned that Appellant had changed the paint color of the vehicle between the day of the shooting and the day Appellant was arrested.

### D.  Procedural history

The State charged Appellant with one count of aggravated assault with a deadly weapon. Both parties waived their right to a jury trial, and the case was tried before the trial court. The trial court found Appellant guilty of the charged offense and assessed punishment of nine years' imprisonment. This appeal followed.

7

## II.  Discussion

Appellant challenges his conviction in one issue, arguing that the evidence is legally insufficient to establish his identity as the person who committed the charged offense because the evidence only included (1) "consciousness of guilt" evidence and (2) Richardson's purported lack of credibility. Appellant's argument fails to acknowledge the circumstantial evidence supporting his conviction.

### A.  Standard of review and applicable law

The Fourteenth Amendment's due-process guarantee requires that legally sufficient evidence support every conviction. *See Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In a legal-sufficiency challenge, we focus solely on whether the evidence, when viewed in the light most favorable to the verdict, would permit any rational factfinder to find the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19; *Brooks*, 323 S.W.3d at 912 (establishing legal sufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

Applying that standard, we recognize the factfinder as the sole arbiter of witness credibility and the weight attached to witness testimony. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Only the factfinder acts "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319). In doing so, the factfinder may choose to believe or disbelieve any testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Dobbs*, 434 S.W.3d at 170 (citing *Jackson*, 443 U.S. at

8

319). In conducting a legal-sufficiency review, "[w]e are not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the element in contention beyond a reasonable doubt[.]" *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex. Crim. App. 1988) (en banc). Instead, "we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 318).

In reviewing the legal sufficiency of the evidence, "[c]ircumstantial evidence and direct evidence are equally probative, and either one alone can be sufficient to establish guilt." *Ratliff v. State*, 663 S.W.3d 106, 113 (Tex. Crim. App. 2022). "In circumstantial evidence cases, it is not necessary that every fact and circumstance point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (citation and internal quotation marks omitted).

Here, Appellant challenges his conviction for aggravated assault with a deadly weapon. As it pertains to this case, a person commits that offense if he commits assault as defined in TEX. PENAL CODE ANN. § 22.01 and he uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.02(a)(2); *see* TEX. PENAL CODE ANN. § 22.01(a)(1) ("A person commits . . . [assault] if the person intentionally, knowingly, or recklessly causes bodily injury to another."). Appellant limits his challenge on appeal to the evidence establishing his identity as the person who shot Iaesha. The State may prove identity by direct or circumstantial evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). Here, we review the totality of the circumstances to determine whether sufficient evidence establishes the defendant's identity as the person who committed the offense. *Lewis v. State*, No. 03-13-00275-CR, 2015 WL

1810389, at *3 (Tex. App.—Austin Apr. 16, 2015, pet. ref'd) (mem. op., not designated for publication).

### B. Legally sufficient evidence established Appellant's identity

Viewed in the light most favorable to the verdict, as we must, the evidence shows that a 911 caller witnessed a woman yelling at and jumping on a Black man whereupon a gun went off, then the man who shot fled in a gold vehicle with dents—a car later connected to Appellant. During his interrogation and in his trial testimony, Appellant admitted to being present at the scene during the shooting after engaging in some form of physical contact with Iaesha, who testified she was shouting at Appellant and physically engaged with him because she suspected him of giving her mother narcotics. Iaesha characterized the physical contact as "tussling" and "fighting" that resulted in her shirt being ripped. Iaesha did not attack any other person than Appellant on the day at issue, and she identified Appellant as the man who shot her in a photograph lineup. During her testimony, Iaesha identified Appellant as the man who was present at the scene and fought with her, but she stopped short of conclusively testifying that Appellant was the person who shot her:

Prosecutor: As you sit here today[,] are you certain this is the man who shot you?

Iaesha: (No verbal response.)

Prosecutor: I need you to answer out loud. I'm sorry.

Iaesha: I remember this is the man I ran into. He was around but him and like I said, the gunshot was loud and clear in my right ear and he was close and there was no one that I seen around. And that's the last person I seen my mom with. [2]

Iaesha also testified that she experienced "ringing in [her] left ear from the gunshot because [she] was [at] close range." Nothing in the record indicates the presence of another person nearby who

---

[2] Iaesha clarified that she heard the shot in her left ear.

10

was armed and could have fired the shot that wounded Iaesha, and Iaesha testified that she did not have a personal conflict or reason to fight with any other person at the scene. From this evidence establishing the close physical proximity between Appellant and Iaesha, the close range at which the firearm was shot, and the lack of evidence showing another person in close range who could have fired the shot that struck Iaesha, the trial court could have rationally concluded that Appellant was the person who shot Iaesha.

Appellant argues that the evidence establishing his identity as the shooter is insufficient because it was based only on speculation and not rational inferences. While factfinders are allowed to draw reasonable inferences from the evidence, it is true that they may not speculate. *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). The Court of Criminal Appeals has illustrated the distinction between drawing reasonable inferences and speculation as follows:

> A woman is seen standing in an office holding a smoking gun. There is a body with a gunshot wound on the floor near her. Based on these two facts, it is reasonable to infer that the woman shot the gun (she is holding the gun, and it is still smoking). Is it also reasonable to infer that she shot the person on the floor? To make that determination, other factors must be taken into consideration. If she is the only person in the room with a smoking gun, then it is reasonable to infer that she shot the person on the floor. But, if there are other people with smoking guns in the room, absent other evidence of her guilt, it is not reasonable to infer that she was the shooter. No rational juror should find beyond a reasonable doubt that she was the shooter, rather than any of the other people with smoking guns. To do so would require impermissible speculation. But, what if there is also evidence that the other guns in the room are toy guns and cannot shoot bullets? Then, it would be reasonable to infer that no one with a toy gun was the shooter. It would also be reasonable to infer that the woman holding the smoking gun was the shooter. This would require multiple inferences based upon the same set of facts, but they are reasonable inferences when looking at the evidence. We first have to infer that she shot the gun. This is a reasonable inference because she is holding the gun, and it is still smoking. Next, we have to infer that she shot the person on the floor. This inference is based in part on the original inference that she shot the gun, but is also a reasonable inference drawn from the circumstances.

*Id.* at 16.

11

The present case scenario is similar to the first hypothetical situation in *Hooper*. Here, there was no evidence of the presence of another person who could have fired the shot that struck Iaesha, and although Appellant contended that the shot came from behind a nearby fence, he admitted he did not see anyone in that area. Iaesha testified that the shot went off in close range next to her ear, and there was nobody else at the scene with whom she had a conflict. She also testified that Appellant was close to her when she was shot "and there was no one that I seen around." And although Appellant minimized the hostility of the altercation between him and Iaesha, compared to Iaesha's account, Appellant admitted that he came into physical contact with Iaesha when she was shot. Thus, the most rational inference from this evidence is that Appellant shot Iaesha because they were involved in a physical altercation, and he was the only one close to her at the time of the shooting. *See David v. State*, 663 S.W.3d 673, 682–83 (Tex. Crim. App. 2022) (stating that "the most rational, common-sense inference" from evidence that the defendant was found alone in a hotel bathroom with marijuana in the toilet during a police raid was that the defendant tampered with physical evidence, and rejecting the notion that the State had to disprove the theory that another person committed the offense despite the presence of other people in the hotel room).

Appellant further contends that the State's allegation that he shot Iaesha was based on speculation because there was no evidence of him having a gun when Iaesha was shot. Although the State did not present evidence directly establishing that Appellant was armed during the altercation, it did establish that a handgun was later found inside the vehicle Appellant was standing by during the shooting and in which he drove off after the shooting. Moreover, Appellant acknowledged that he pleaded guilty to the federal charge of possession of a firearm by a convicted felon. Even though he claimed that he only did so because "[h]is lawyer told [him] to [plead

guilty,]" the trial court was free to reject Appellant's claim that he was not actually guilty of that charge.

Appellant also argues that evidence of his consciousness of guilt (such as fleeing from the scene after the shooting, altering his vehicle's appearance to avoid detection by police, and initially denying being present at the scene during his interrogation) do not alone constitute sufficient evidence to support his conviction. He also argues that his purported lack of credibility does not, by itself, constitute sufficient evidence to establish his guilt. It is true that consciousness-of-guilt evidence standing alone is not legally sufficient to support a conviction. *Cooper v. State*, No. 14-07-00021-CR, 2008 WL 5244873, at *4 (Tex. App.—Houston [14th Dist.] Dec. 18, 2008, pet. ref'd) (not designated for publication) (citing *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. [Panel Op.]1979). However, consciousness-of-guilt evidence is "a circumstance from which the jury may draw an inference of guilt" and can lend additional support to the jury's verdict. *Id.* (citing *Valdez*, 623 S.W.2d at 321). As such, although Appellant's actions evincing his consciousness of guilt do not alone constitute sufficient evidence to support his conviction, his actions are relevant and probative evidence that support the trial court's finding of guilt. *See id.* (evidence defendant fled from the scene after shooting the victim and took steps to conceal his identity constituted evidence evincing his consciousness of guilt, which, although not sufficient alone to support the defendant's conviction, gave additional support to jury's verdict).

### C. Conclusion

In sum, the record contains no direct evidence establishing that Appellant shot Iaesha. Bearing in mind that circumstantial evidence is as probative of guilt as direct evidence and that we are not to substitute our judgment for the factfinder's in terms of weight or credibility of the testimony, we conclude that the cumulative force of the circumstantial evidence is sufficient to

13

allow any rational factfinder to find beyond a reasonable doubt that Appellant was the person who committed the offense. *See Ratliff*, 663 S.W.3d at 113; *see also Sendejo v. State*, Nos. 01-14-00697-CR, 01-14-00698-CR, 2015 WL 3799504, at *3 (Tex. App.—Houston [1st Dist.] June 18, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that the evidence was legally sufficient to establish the defendant's identity as the person who shot at the victims where the victims did not directly see the defendant shoot a firearm at them from behind a closed door, but they identified the defendant as the only person who approached the door and testified that they argued with the defendant moments before the shooting).

## III. CONCLUSION

We affirm the judgment supporting Appellant's conviction.

LISA J. SOTO, Justice

June 23, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)