Opinion issued July 2, 2009
















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00984-CR

____________


JARED DANIEL, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 185th District Court 

Harris County, Texas

Trial Court Cause No. 1088337









MEMORANDUM OPINION

 Appellant, Jared Daniel, appeals from a judgment convicting him of capital
murder for causing the deaths of Shelita Jones and Corey Brown during the same
criminal transaction. See Tex. Penal Code Ann. §§ 19.02(b)(1) (Vernon 2003),
.03(a)(7)(A) (Vernon Supp. 2008). Appellant was sentenced to life in prison, which
was the only possible sentence since the State did not seek the death penalty. See id.
§ 19.03(a)(7)(A). Appellant pleaded not guilty to the jury. The jury found him guilty
under a jury charge that allowed it to convict appellant either as the primary actor or
as a party acting with Jason Edward McMaster (McMaster). Appellant's 14 issues
challenge the legal and factual sufficiency of the evidence to sustain his conviction. 
Because the evidence is sufficient to sustain appellant's conviction as a party to
capital murder, we affirm. 

Background


 On December 21, 2005 at around 6:25 p.m., Kentrell Smith (Kentrell) arrived
at a south Houston La Quinta Inn and met with his cousin Ricky Smith (Ricky). A
short time later, the men were joined by the complainant, Brown. Brown arrived with
McMaster, who was in possession of a 10-millimeter handgun; Joseph Kemp (Kemp);
and appellant, who was high on ecstacy and in possession of a 9-millimeter handgun. 
The group proceeded to smoke marijuana in the hotel room.

 McMaster asked Brown to call Brown's drug dealer because McMaster wanted
to rob the dealer and kill him. Appellant assured McMaster that they "were going to
get somebody before this night over with." Brown repeatedly refused to call the
dealer. McMaster asked Brown to call another person, but Brown also refused to
make that call, which irritated McMaster. McMaster then left the hotel room with
Brown, Kemp, and appellant. After cleaning the room, Ricky and Kentrell went to
Ricky's apartment, which was located in the same apartment complex where Brown
lived with his girlfriend, Jones.

 Later that evening, Alex Ramirez, who was another tenant in the apartment
complex with Jones and Brown, heard seven or eight gunshots from the direction of
the couple's apartment. Assuming the noises came from people who were "playing,"
Ramirez did not notify the police 

 Two hours later, the Pasadena Police Department responded to a report of a
possible dead body in Brown's apartment. The responding officer found the front
door open. Brown was inside of the doorway, laying face-down in blood, with shell
casings around his body. Autopsy results later revealed that Brown's blood contained
metabolites of marijuana. Further inspection of the apartment revealed that Jones,
who was 17-weeks pregnant, had also been shot and killed.

 While police officers were at the crime scene, Kentrell and Ricky approached
them. Kentrell reported the conversation that had occurred between McMaster,
Brown, and appellant earlier in the evening. Kentrell also told the officers about the
weapons he had seen in the men's possession. Kentrell directed the officers to the
hotel where the men had been, but Kentrell was unable to identify the room. Police
returned Kentrell to the complex and had Ricky accompany them to the hotel. Ricky
was able to direct the officers to the correct room, but they were unable to enter the
room without a warrant. 

 Following Kentrell's statements, the police attempted to contact McMaster and
appellant. Two days after the murders, McMaster called the police and provided
them with a DNA sample. In the subsequent investigation, Kentrell was shown single
photographs of both McMaster and appellant. Kentrell identified McMaster and
appellant as two of the men from the hotel the night of the murders. Following the
photo identification, DNA was collected from appellant. 

 DNA left on the doorknob of the apartment's bathroom was, to a statistical
probability, linked to McMaster. There is only a one in 11 quadrillion chance that the
DNA belongs to someone else of McMaster's race. McMaster and appellant could
not be excluded as being the donors from DNA found on a marijuana cigar at the
scene. The marijuana cigar linked to appellant only contained enough DNA evidence
to produce a partial profile match to appellant. One piece of the cigar contained a
DNA sample that matched appellant's DNA and would be found only in one of every
49,000 people of appellant's race. Another sample produced a partial profile that
would be found in one in every 216 people of his race, and a third could not exclude
appellant as the donor.

 Other physical evidence at the scene included shell casings that were from 9-millimeter and 10-millimeter weapons. No weapon was recovered at the scene. Two
.38-caliber bullets were recovered from Jones's body and matched a bullet that was
found in Brown. An expert testified that .38-caliber bullets could be fired from a 9-millimeter weapon but not from a 10-millimeter. Based on the casings and projectiles
recovered from the scene and the bodies of the complainants, the expert opined that
there were likely four guns used in the shootings, including two .38-caliber revolvers,
a 9-millimeter Luger, and a 10-millimeter semi-automatic.

 Police obtained the records of the telephone company that provided service to
the cellular phone used by McMaster to contact the police. The record showed that
on the night of the murders, the phone was used near the La Quinta hotel at the time
that Kentrell said the men met and near the general area of the murders during the
time of the shootings.

 Appellant and McMaster were each charged with capital murder for the
murders of Brown and Jones. At trial, appellant did not offer the testimony of any
witnesses. At the end of the guilt/innocence phase of trial, the jury was instructed
that it could find appellant guilty if it determined he alone committed capital murder
or alternatively, if he acted as a party to capital murder with McMaster.

Elements to Establish Capital Murder as a Party

 A person commits capital murder when he commits murder under section
19.02(b)(1) of the Penal Code and "murders more than one person . . . during the
same criminal transaction." Tex. Penal Code Ann. § 19.03(a)(7)(A). Under Texas
Penal Code section 19.02(b)(1), a person commits murder if he "intentionally or
knowingly causes the death of an individual." Id. § 19.02(b)(1).

 "A person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is criminally
responsible, or by both." Id. § 7.01(a) (Vernon 2003). Criminal responsibility is
defined in several ways, one of which is that the defendant, "acting with intent to
promote or assist the commission of the offense . . . solicits, encourages, directs, aids,
or attempts to aid the other person to commit the offense." Id. § 7.02(a)(2) (Vernon
2003). When a party is not the primary actor, the State must prove conduct
constituting an offense plus an act by the defendant done with the intent to promote
or assist such conduct. Beier v. State, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985);
Miller v. State, 83 S.W.3d 308, 313 (Tex. App.--Austin 2002, pet. ref'd). Evidence
is sufficient to sustain a conviction under the law of parties if it shows that the
defendant was physically present at the commission of the offense and encouraged
the commission of the offense either by words or other agreement. Tarpley v. State,
565 S.W.2d 525, 529 (Tex. Crim. App. 1978); Miller, 83 S.W.3d at 313-14. 

 "Since an agreement between parties to act together in common design can
seldom be proven by words, the State often must rely on the actions of the parties,
shown by direct or circumstantial evidence, to establish an understanding or a
common design to commit the offense." Miller, 83 S.W.3d at 314. The agreement,
if any, must be made before or contemporaneous with the criminal event, but in
determining whether one has participated in an offense, the court may examine the
events occurring before, during and after the commission of the offense. Beier, 687
S.W.2d at 3-4; Miller, 83 S.W.3d at 314. Circumstantial evidence may suffice to
show that one is a party to an offense. Wygal v. State, 555 S.W.2d 465, 469 (Tex.
Crim. App. 1977); Miller, 83 S.W.3d at 314. 

 While mere presence at the scene is not enough to sustain a conviction, that
fact may be considered in determining whether an appellant was a party to the
offense. Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979) (op. on reh'g);
Miller, 83 S.W.3d at 314. If the evidence, however, shows the mere presence of an
accused at the scene of an offense, without more, then it is insufficient to sustain a
conviction as a party to the offense. Valdez, 623 S.W.2d at 321; Scott v. State, 946
S.W.2d 166, 168 (Tex. App.--Austin 1997, pet. ref'd).

Sufficiency of Evidence as Party to Capital Murder

 Appellant challenges the legal and factual sufficiency of the evidence to
establish his guilt.

 A. Law Pertaining to Legal Sufficiency

 In a legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jurors are the exclusive judges of
the facts, the credibility of witnesses and weight to give witness testimony. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). A jury is entitled
to accept one version of the facts and reject another, or reject any part of a witness's
testimony. Id.

 When a case relies on circumstantial evidence, the focus should be on the sum
total of the evidence. Evans v. State, 202 S.W.3d 158, 166 (Tex. Crim. App. 2006);
Christensen v. State 240 S.W.3d 25, 36 (Tex. App.--Houston [1st Dist.] 2007, pet.
ref'd). "It is the logical force of the circumstantial evidence, not the number of links,
that supports a jury's verdict." Evans, 202 S.W.3d at 166. If the logical force of the
evidence, coupled with reasonable inferences from the evidence, would be sufficient
enough for a jury to find appellant guilty beyond a reasonable doubt, the verdict
should be affirmed. Id. 

 B. Law Pertaining to Factual Sufficiency

 When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury's resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury's verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to appellant, most undermines the jury's verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

 "Appellate courts should afford almost complete deference to a jury's decision
when that decision is based upon an evaluation of credibility." Lancon v. State, 253
S.W.3d 699, 705 (Tex. Crim. App. 2008). "The jury is in the best position to judge
the credibility of a witness because it is present to hear the testimony, as opposed to
an appellate court who relies on the cold record." Id. The jury "may choose to
believe some testimony and disbelieve other testimony." Id. at 707.

 C. Analysis of Sufficiency of Evidence

 In his seventh, eighth, and ninth issues, appellant challenges the legal
sufficiency of the evidence, and in his tenth, eleventh, and twelfth issues, appellant
challenges the factual sufficiency of the evidence to show that he acted with intent
to promote or assist McMaster when McMaster intentionally or knowingly caused the
death of Jones and Brown by shooting them with firearm during the same criminal
transaction.


 1. Robbery

 Appellant contends that the previous conversation heard by Kentrell that links
appellant to the murder included a plan to rob and murder a victim and that there is
no evidence a robbery occurred at the apartment. Appellant claims that the
approximately $3,000 in paper currency, three baggies of marijuana, a stun gun, and
ammunition recovered at the scene show that there is no evidence that the apartment
was robbed. Although the currency was not stolen, it was hidden inside of a sneaker
in the closet, concealing it from the view of a prospective thief. The jury could have
reasonably inferred the cash was not taken because the cash was hidden from view
rather than due to the lack of an intent to commit robbery. More importantly,
McMaster's statement on the night of the murders was that they wanted to rob and
kill a drug dealer, but appellant subsequently stated they "were going to get
somebody before this night over with." Their statements do not reflect a definite
intent to commit robbery, but instead show a firm desire to kill and "get somebody." 
We must defer to the jury's determination of the weight to give any perceived
inconsistency in the statements as compared to the facts that actually transpired. See
Margraves, 34 S.W.3d at 919.

 

 2. Police Investigation

 Appellant claims that the investigation was not thorough and the investigators
"rushed to judgment against him." Appellant contends the investigators did not 
collect DNA from Ricky, Kentrell, and Kentrell's girlfriend, nor did they search
Kentrell's house or Ricky's apartment that was in the same complex where the
murders occurred. Additionally, the police failed to contact local hospitals the night
of the shooting to check for possible gunshot wound reports or pursue other motives
for the murder. Although the record supports appellant's position that not all possible
investigations were conducted, the jury was presented with testimony to explain the
absence of the investigations. The weight to give the absence of investigations is a
credibility determination that must be left to the jury. See id.

 3. Kentrell's Testimony

 Appellant contends the testimony given by Kentrell is contradictory and does
not support a rational conclusion that appellant caused the deaths of Jones and
Brown. At one point, Kentrell admitted that appellant did not participate in the
discussion of planning the homicide. Appellant also claims Kentrell testified against
appellant so the police would not investigate Kentrell for the murders. We defer to
the jury to believe or disbelieve testimony and the motivations of the witness. See id. 

 4. Marijuana Cigars

 Appellant contends that no evidence shows when the marijuana cigars were
smoked, and that no DNA evidence from the cigars links him to the scene with
scientific certainty.

 Appellant accurately notes that the precise time that the marijuana cigars at the
scene were smoked could not be determined, but the jury could reasonably infer from
the circumstances that the cigars had recently been placed at the scene. The ash tips
on the cigars were undisturbed even though some were found on top of the only
mattress in the apartment. An officer who responded to the scene opined that the
undisturbed tips of the marijuana cigars implied the cigars had not been at their
location long. Because the ash tips were intact, the jury could reasonably infer they
had recently been placed at the scene.

 Appellant also accurately notes that no conclusive DNA evidence links him to
the scene, but the DNA evidence is sufficient to connect appellant to the offense
when that DNA evidence is examined in combination with the other circumstantial
evidence. As noted above, the evidence shows that the marijuana cigars found in the
apartment had been recently placed there. Both McMaster and appellant had been
smoking marijuana earlier in the day. One of the marijuana cigars contained a DNA
sample that matched appellant's DNA with a statistical probability that the DNA
would be found in one of every 49,000 people of appellant's race. This statistical
probability is sufficient for the jury to reasonably determine that the DNA belonged
to appellant when that evidence is examined in light of appellant's expressed desire
to "get somebody" that night with McMaster, whose DNA was conclusively found
on the doorknob of the apartment's bathroom.

 5. Totality of Evidence

 In addition to the above challenges, appellant asserts there is no fingerprint
evidence linking appellant to the apartment, no gun recovered from the crime scene,
and no witness to the shooting. Although no one saw the shooting, the time of the
shooting was established by the neighbor who heard the shots. Kentrell testified that
a few hours before the shootings occurred, appellant and McMaster participated in
a discussion to commit murders. The record shows McMaster and appellant were
heard discussing a plan to rob and murder a drug dealer earlier the same evening. 
Appellant assured McMaster that they were "going to get somebody before this night
over with." Kentrell testified that McMaster and appellant left the hotel together with
Brown, one of the complainants. Prior to leaving the hotel, McMaster and appellant
had reason to be angry with Brown because Brown refused to set them up with a
victim for a robbery and murder. McMaster's cellular phone traveled from the hotel
to the area surrounding the apartment complex in which the murders occurred at the
time of the shootings. The majority of bullets used at the scene of the crime are the
same caliber as the weapons that appellant and McMaster were previously seen
possessing during the time they discussed committing murder. Furthermore, as
explained in more detail above, the jury could reasonably determine that the DNA
found in the apartment belonged to appellant and McMaster. 

 Viewing the evidence in a light favorable to the jury's verdict, the logical force
of the total combined evidence shows that a jury could reasonably find beyond a
reasonable doubt that appellant acted with intent to promote or assist McMaster and
did aid McMaster in intentionally or knowingly causing the death of Brown and Jones
during the same criminal transaction. See Evans, 202 S.W.3d at 166; Guevara v.
State, 152 S.W.3d 45, 49-51 (holding circumstantial evidence legally sufficient to
convict appellant as party to murder). We overrule appellant's seventh, eighth, and
ninth issues.

 Giving due deference to the jury's weighing of the evidence, we conclude that
a neutral examination of the evidence shows the evidence is not so weak that the
jury's finding appellant guilty of capital murder under the law of parties is clearly
wrong or manifestly unjust, and that the determination of guilt is not against the great
weight and preponderance of the evidence. See Johnson, 23 S.W.3d at 11; Skinner
v. State, 956 S.W.2d 532, 536-37 (Tex. Crim. App. 1997) (holding evidence
sufficient to uphold capital murder conviction when appellant was seen with weapon
similar to that used in shootings, and appellant had been seen with victims short time
prior to shootings); Ransom v. State, 789 S.W.2d 572, 577-78 (Tex. Crim. App.
1989) (holding circumstantial evidence sufficient to sustain capital murder conviction
when defendant was seen looking for knives with co-defendants prior to murder and
his blood was genetically linked to blood at scene). We overrule appellant's tenth,
eleventh, and twelfth issues. 

 Having determined the evidence is legally and factually sufficient to sustain
appellant's conviction for murder as a party to the offense, we need not address the
sufficiency of the evidence to establish appellant's guilt as the primary actor. See
Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999) (holding when not possible
to tell whether jury found appellant guilty on specific theory and jury charge
authorizes jury to convict on several different theories, verdict of guilt will be upheld
if evidence is sufficient on any one theory). We therefore do not reach the first
though sixth issues that challenge the legal and factual sufficiency of the evidence to
prove appellant's guilt as the primary actor.

 Having held the evidence to be legally sufficient to uphold the conviction, we
hold the trial court did not err by denying appellant's request for an instructed verdict
of acquittal because the instructed verdict requires the same analysis of the evidence
as does the test for legal sufficiency. See Canales v. State, 98 S.W.3d 690, 693 (Tex.
Crim. App. 2003) (challenge to trial court's denial of motion for instructed verdict is
challenge to legal sufficiency of evidence). We overrule appellant's thirteenth issue.

 Having found that the evidence was legally sufficient to show appellant acted
as a party with McMaster in causing the deaths of Jones and Brown, we hold the trial
court properly included a jury instruction on the law of parties. See, e.g., Ferrel v.
State, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001) (jury instruction can be given if
"anything more than a scintilla of evidence" relating to issue is present). We
overrule appellant's fourteenth issue. 

Conclusion


 We affirm the judgment of the trial court.




 Elsa Alcala

 Justice 

Panel consists of Justices Jennings, Alcala, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).