

## NUMBER 13-08-00023-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

COREY JOSEPH SCHUFF,                                         **Appellant,**

**v.**

THE STATE OF TEXAS,                                          **Appellee.**

### On appeal from the Criminal District Court
### of Jefferson County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza**
**Memorandum Opinion by Justice Rodriguez**

A jury convicted appellant, Corey Joseph Schuff, of the murder of Tonia Lynn Porras. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003). After finding that Schuff was a repeat felony offender, the jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for life. *See id.* § 12.42

(Vernon Supp. 2008). By six issues, Schuff (1) challenges the legal and factual sufficiency of the evidence supporting his conviction, (2) complains of charge error, and (3) asserts that the trial court abused its discretion when it denied his motion for new trial. We affirm as modified.

## I. Factual Background[1]

Early in the morning of October 29, 2005, Porras called 911 and told the operator that she was worried about a former boyfriend who had been released from custody and who would be coming after her in a green sports car stolen from a friend. Schuff, an ex-boyfriend of Porras, made threats against her life after finding out that Porras had slept with another man. On November 5, 2005, Porras's father noticed that a box or bag next to Porras's car had not been moved in three days and decided to check on Porras. After finding Porras's body on the floor of her apartment, he called 911. Porras had been bound, gagged, and repeatedly stabbed.

## II. Sufficiency of the Evidence

In his first four issues, Schuff contends that the evidence is legally and factually insufficient to support his conviction. Specifically, he complains that the evidence is insufficient to prove that he was the person who caused Porras's death with intent or knowledge.

### A. Standard of Review and Applicable Law

In assessing the legal sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict and determine whether,

---

[1]As this is a memorandum opinion, and the parties are familiar with the facts, we will not recite them except as necessary to provide a general background here and, later, to explain the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

based on that evidence and the reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This assessment affords appropriate deference "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts." *Jackson*, 443 U.S. at 319. In reviewing the legal sufficiency of the evidence, "we should look at 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)).

In a factual-sufficiency review, the only question to be answered is "[c]onsidering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting the conviction is 'too weak' to support the factfinder's verdict" or (2) "considering conflicting evidence, the factfinder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). When a reviewing court conducts a factual-sufficiency review, it must defer to the jury's findings. *Id*.

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Such a charge is one that accurately sets out the law, is authorized by the

3

indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240.

Circumstantial evidence, by itself, may be enough to support a jury's verdict. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *see Smith v. State*, 965 S.W.2d 509, 515 (Tex. Crim. App. 1998) (en banc). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994) (en banc) (per curiam); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1994).

The indictment alleged that on the date in question, Schuff "did then and there intentionally and knowingly cause the death of an individual, namely: Tonia Lynn Porras . . . by stabbing and cutting [Porras] with a deadly weapon, to-wit: a knife, that in the manner of its use and intended use was capable of causing serious bodily injury and death . . . ." A person commits murder if he "intentionally or knowingly causes the death of an individual." *See* TEX. PENAL CODE ANN. 19.02(b)(1). A person acts intentionally "with respect to . . . a result of his conduct when it is his conscious objective or desire to . . . cause the result of his conduct." *Id.* § 6.03(a) (Vernon 2003). A person acts knowingly "with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b) (Vernon 2003). A person's knowledge and intent may be inferred from his "acts, words, and conduct . . . and the method of committing the crime and from the nature of the wounds inflicted on the victim." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

## B. Analysis

In this case, a rational fact finder could have determined the following from the evidence: (1) Schuff and Porras had a volatile on-again-off-again relationship; (2) Natalie Lingo told Schuff that Porras had slept with her husband, Brian Lingo,[2] who was one of Schuff's best friends;[3] (3) after being told about the alleged sexual relationship, Schuff made specific threats toward Porras;[4] (4) Natalie told Porras about the threats and warned her to stay away from Schuff because there "might . . . be domestic issues like in the past" because "he was really angry"; (5) when Porras called 911 her voice was shaky and she was extremely frightened and worried about an ex-boyfriend who had been released from custody; (6) the ex-boyfriend had threatened her and would be coming after her in a green sports car; (7) Schuff left the Lingo home in a teal green Camaro; (8) Schuff did not return the car, and it was later reported stolen; (9) Schuff and Wesley Smith[5] disposed of a stolen green sports car; (10) the police located the car "stripped out," with parts left next to the vehicle to weather; (11) the crime scene revealed that there had been a struggle and that blood was found in every room of Porras's apartment, including along the walls and on the ceilings; (12) Porras had been gagged and bound with duct tape;[6] (13) her eyes had been

---

[2]Natalie and Brian Lingo were divorced in March 2006.

[3]*See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Motive is a significant circumstance indicating guilt.") (citing *Harris v. State*, 727 S.W.2d 537, 542 (Tex. Crim. App. 1987)); *see also Reed v. State*, 744 S.W.2d 112, 127 (Tex. Crim. App. 1988) (providing that evidence which merely goes to show motive or opportunity of the accused to commit the crime may be considered in connection with other evidence tending to connect the accused with the crime).

[4]Natalie testified that after she told Schuff that Porras had slept with Brian, Schuff said that he was going to kill Porras, strangle her and not stop, and rape her. He also said that Porras deserved it.

[5]Wesley Smith was indicted for the same offense but was tried separately.

[6]Porras's wrists were also bound with a thermal undershirt beneath the tape.

5

covered with duct tape, and an electrical cord had been wrapped around her neck; (14) there were "indications" that Schuff's DNA was on the duct tape used to bind and gag Porras, although it could not be determined that the samples matched Schuff with scientific certainty;[7] (15) Porras had blunt force injuries to the back of her skull and across her eyebrows; (16) Porras had twenty-six stab wounds to the chest (including two stab wounds into the heart and three into the left lung), arm (eight stab wounds), and back (nine stab wounds); (17) the wounds were excessive and numerous, which is seen when there is a relationship, emotion, and hatred involved, and not a random act of violence; (18) after Porras's death, Schuff traveled from Jefferson County to Montgomery County,[8] where he met Gino Coelho; (19) Schuff told Coelho that he had stabbed a girl about twenty times;[9] and (20) Schuff told Mark Branson that he "was on the run" and that "he was running from

---

[7]The evidence also revealed that Schuff's DNA and a fingerprint from Schuff's right middle finger were identified on a crushed beer can found in Porras's kitchen. The DNA serology analyst further testified that the duct tape had DNA indications from the deceased, Schuff, and Wesley Smith.

[8]*See Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981) (op. on reh'g) (en banc) (explaining that while flight alone will not support a verdict of guilt, evidence of flight from a crime scene is a circumstance from which an inference of guilt may be drawn); *see also Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994) (en banc) (stating that a finding of intent may be inferred from evidence of flight from scene).

[9]At trial, Gino Coelho first denied giving police a statement and responded that Schuff never told him he stabbed anyone. Coelho later, however, testified as follows:

Q: (The State)  But you do agree that the statement, "I stabbed that girl about 20 times," appears in your statement as a quote from Corey Schuff; is that correct?

A: (Coelho)  (No response).

Q.  That it appears –

A.  Yes.

Q.  – in your statement.

A.  I – I mean, I don't remember saying it at all, to be honest with you; but if I – if I signed it, I guess I said it. You know what I mean?

6

the needle," comments Branson took to mean Schuff was running from the death sentence. We conclude that this evidence supports the determination that Schuff was the person that caused Porras's death with intent or knowledge.

Schuff points us to the following evidence which he asserts is controverting evidence: the State's DNA serology analyst could not say with scientific certainty that the samples tested from the duct tape specifically matched Schuff's DNA. He asserts that the DNA profile analysis, if believed, simply proves he was present at Porras's residence on a prior occasion and nothing more. Schuff argues that, because Porras was moving back and forth to Austin, the DNA could have been placed there when Schuff was helping Porras pack. Relying on *Ortiz v. State*, Schuff also argues that the only link to Porras's death is his presence in her home, which is not sufficient to support a conviction of murder. *See* 577 S.W.2d 246, 248 (Tex. Crim . App. 1979) (providing "that it is well settled that mere presence is not alone sufficient to support a conviction under Section 7.02(a)(2) [as a party to the offense] . . . , although it is a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a participant"). In addition, officers who investigated the crime scene testified as follows: (1) family relationship violence can occur immediately without the attacker taking time or going "to all this trouble"; (2) there had been no sexual assault as part of the homicide; (3) the evidence of a struggle could also have been evidence of someone ransacking the apartment looking for drugs or money;[10] and (4) it would not be unusual for Schuff's fingerprints to be inside the apartment because Schuff had apparently, on occasion, stayed overnight at the apartment with Porras.

---

[10]Drug paraphernalia and a small bag of methamphetamines were found in Porras's apartment.

Nonetheless, viewing the evidence in the light most favorable to the verdict and looking at events occurring before, during, and after the commission of the offense, we conclude the evidence is legally sufficient for a rational jury to find Schuff guilty of murder. *Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13. Viewing the evidence neutrally, we conclude the evidence supporting the conviction is not so weak that the jury's determination is clearly wrong and manifestly unjust or that the verdict is against the great weight and preponderance of the evidence. *See Laster*, 275 S.W.3d at 518; *Watson*, 204 S.W.3d at 414-15. Thus, the evidence is also factually sufficient to support the conviction. Issues one, two, three, and four are overruled.

### III. CHARGE ERROR

By his fifth issue, Schuff complains that the trial court committed charge error when it failed to limit the definitions of "knowingly" and "intentionally" that were given to the jury. The State concedes error but contends that the harm was not egregious.

### A. Standard of Review and Applicable Law

In reviewing a claim of jury charge error, an appellate court must determine first whether error actually occurred and, second, whether any resulting harm requires reversal. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (en banc). If the error in the charge was not the subject of an objection, as in this case, reversal is required if the record shows egregious harm to the defendant. *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004) (en banc); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc). "For both preserved and unpreserved charging error, 'the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and

8

any other relevant information revealed by the record of the trial as a whole.'" *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995) (en banc) (quoting *Arline v. State*, 721 S.W.2d 348, 351-52 (Tex. Crim. App. 1986) (en banc)). "In assessing harm resulting from the inclusion of improper conduct elements in the definitions of culpable mental states, we 'may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge.'" *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) (en banc) (quoting *Cook v. State*, 884 S.W.2d 485, 492 n.6 (Tex. Crim. App. 1994)).

"Murder is a 'result of conduct' offense, which requires that the culpable mental state relate to the result of the conduct, i.e., the causing of the death." *Roberts v. State*, 273 S.W.3d 322, 328-29 (Tex. Crim. App. 2008) (quoting *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003) (en banc), citing *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994)). Because the actor must have a particular mind set—intentional or knowing—regarding the prohibited result, the State must "prove that appellant intentionally caused the death of the deceased which is a result of conduct." *Patrick*, 906 S.W.2d at 491 (citing *Cook*, 884 S.W.2d at 490). The culpable mental state must be limited to the result of the conduct, and failure to do so constitutes error. *Cook*, 884 S.W.2d at 491.

## B. Analysis

### 1. Error

In the abstract portion of the charge, the trial court defined the words "intentionally" and "knowingly" using the following full statutory definitions of the culpable mental states:

> INTENTIONALLY: A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

9

KNOWINGLY: A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exists [sic]. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the death.

See TEX. PENAL CODE ANN. §§ 6.03(a) (defining "intentionally"), 6.03(b) (defining "knowingly"). Based on the above, we conclude, as the State concedes, that the trial court committed charge error because the definitions of "intentionally" and "knowingly" were not limited to the "result of his conduct"—the death of the deceased. The trial court erred in defining the culpable mental states to include "the nature of his conduct" and "the circumstances surrounding his conduct."

## 2. Harm

Having found error, we must determine whether Schuff suffered egregious harm because the error in the charge was not the subject of an objection. See Bluitt, 137 S.W.3d at 53; Almanza, 686 S.W.2d at 171. As set out above, we do so by looking at the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. See Patrick, 906 S.W.2d at 492.

### a. Entire Jury Charge

The relevant portion of the trial court's charge in this case read as follows:

> Now, if you believe from the evidence beyond a reasonable doubt that in Jefferson County, Texas, on or about the 2nd day of November, Two Thousand and Five, the defendant[,] COREY JOSEPH SCHUFF, did then and there intentionally or knowingly cause the death of an individual, namely: TONIA LYNN PORRAS . . . by stabbing and cutting [Porras] with a deadly weapon, to wit: a knife, that in the manner of its use and intended use was capable of causing serious bodily injury and death, you shall find the defendant guilty of the offense of murder.

10

Unless you so find, or if you have a reasonable doubt thereof, you shall find the defendant NOT GUILTY.

This application paragraph correctly instructed the jury on the law. Although the definitions of "intentionally" and "knowingly" in the abstract paragraphs of the charge set forth complete statutory language, the application paragraph stated that Schuff "did then and there intentionally or knowingly cause the death of [the victim] . . . ." In the application paragraph, the terms "intentionally or knowingly" directly modify the phrase "cause the death." As explained by the *Patrick* court, "[r]eferring back to the definitions of culpable mental states, it is obvious from the application paragraph that the 'result of conduct' and 'cause the result' language are the applicable portions of the full code definitions." *Id.* at 493. Our entire-jury-charge review favors finding the error not to be egregious. *See id.* at 492.

### b. State of the Evidence

We have already concluded that the evidence in this case is both legally and factually sufficient to support Schuff's conviction. Therefore, our state-of-the-evidence review weighs in favor of finding no egregious harm. *See id.*

### c. Argument of Counsel

Reviewing counsel's arguments made to the trial court, we note that Schuff did not object to the State's argument during trial, and, thus, cannot now complain on appeal. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (en banc). Nevertheless, for purposes of this analysis, we also note that the State made no attempt to modify the language in the application paragraph using the language found in the definitions. The State did not discuss the terms "intentionally" or "knowingly" during its arguments. Rather,

11

the State's arguments directed the jury to the result of Schuff's conduct. Thus, this review favors a finding that the charge error was not egregious. *See Patrick*, 906 S.W.2d at 492.

### d. Other Relevant Information

We find no other relevant information revealed by the record of the trial as a whole that supports a conclusion that the charge error was egregious. This determination again favors the State's position that the error did not cause egregious harm. *See id*.

Accordingly, we conclude that no egregious harm resulted from the trial court's failure to limit the definitions of culpable mental states to proving the conduct element of the underlying offense. We overrule Schuff's fifth issue.

### IV. MOTION FOR NEW TRIAL

Schuff contends, by his sixth issue, that the trial court abused its discretion in denying his motion for new trial, which urged that the verdict was contrary to the law and the evidence. *See* TEX. R. APP. P. 21.3(h). Schuff asserts that a juror discussed the case with others. In the motion, Schuff contends that the jury relied on the testimony of a co-defendant who did not testify at his trial.[11] Schuff reasons that the testimony of the co-defendant must have been secured through external sources and not from the evidence adduced at his trial, and therefore, the verdict was contrary to the law and the evidence.

### A. Standard of Review and Applicable Law

An appellate court will generally review a trial court's ruling on a motion for new trial under an abuse of discretion standard of review. *Holden v.* State, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006); *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004); *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001).

---

[11]This reference is to Smith. He did not testify at Schuff's trial.

We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable. We must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party. Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling.

*Charles*, 146 S.W.3d at 208.

The defendant generally has the burden of proof on a motion for new trial. *See Patrick*, 906 S.W.2d at 498. The proponent of the motion for new trial bears the initial burden of establishing facts entitling him to the relief sought. *See Marquez v. State*, 921 S.W.2d 217, 222 (Tex. Crim. App. 1996) (en banc).

## B. Analysis

In support of his motion for new trial, Schuff attached the affidavit of his trial counsel. The affidavit provided the following:

A posting on the internet website, www.courttv.com[,] message boards stated that the person pos[t]ing this item was related to a juror in this trial. He states on a posting dated November 30, 2007, that the juror informed him the jury had relied upon testimony by a co-defendant. This person never testified at trial. The only means a juror had to discover the information contained in the co-defendant's statement was to read or listen to the news media. Basing a decision on information contained outside the record or listening or reading the news would be a violation of the oath and instructions given the jurors before the trial.

Attached to counsel's affidavit was a copy of postings regarding this case from the identified website. No other affidavits were attached to the motion. In addition, at the hearing on Schuff's motion for new trial, no testimony or affidavit was received from any juror alleging that information was received from any source other than evidence or testimony at trial.

Viewing the evidence in the light most favorable to the trial court's ruling and presuming that all reasonable factual findings that could have been made against the

13

losing party were made against that losing party, we conclude that the trial court did not act arbitrarily or unreasonably in denying relief. *See Charles*, 146 S.W.3d at 208. Schuff did not meet his burden. *See Patrick*, 906 S.W.2d at 498. He did not establish facts entitling him to the relief sought. *See Marquez*, 921 S.W.2d at 222. Thus, the trial court did not abuse its discretion. *See Holden*, 201 S.W.3d at 763. We overrule Schuff's sixth issue.

## V. MODIFICATION OF JUDGMENT

The trial court's judgment mistakenly recites that Schuff pleaded guilty to the offense. The record shows Schuff pleaded not guilty to the charges in the indictment. Because the necessary information is available in the record, on our own motion we modify the trial court's November 30, 2007 judgment to show Schuff entered a not guilty plea. *See* TEX. R. APP. P. 43.2(b) (setting out that a judgment may be modified and affirmed as modified on appeal); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993) (same); *Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex. App.–Dallas 1991, pet. ref'd) (providing that an appellate court has the authority to modify incorrect judgments, sua sponte, when the necessary information is available to do so).

## VI. CONCLUSION

Accordingly, we affirm the trial court's judgment as modified.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 15th day of October, 2009.

14